**IN THE UNTED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RITA BROWNLEE,** individually and on behalf of all similarly situated individuals**,** | ) ) ) | Case No. 1:21-cv-01428 |
| **Plaintiff,** | ) ) | **JURY TRIAL DEMANDED** |
| **v.** | ) ) | |
| **ALLSTATE INSURANCE COMPANY,** an Illinois insurance company, | ) ) ) | |
| **Defendant.** | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Rita Brownlee ("Brownlee" or the "Plaintiff") brings this Class Action

Complaint and Demand for Jury Trial ("Complaint") against Defendant Allstate Insurance

Company ("Allstate" or "Defendant") under the Telephone Consumer Protection Act, 47 U.S.C.

§ 227 *et seq*. ("TCPA" or the "Act") to stop Defendant's practice, either directly or through its

agents, of placing multiple calls during any twelve-month period to persons who have registered

their phone numbers on the National Do Not Call Registry ("National DNC Registry") and after

such registrants have requested for such calls to stop, for statutory damages for all such calls

made in violation of the TCPA, and for redress on behalf of all persons similarly injured by

Defendant's or its agents' conduct.

For her Complaint, Plaintiff alleges as follows upon personal knowledge as to herself and

her own acts and experiences, and, as to all other matters, upon information and belief, including

investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      Defendant Allstate is an insurance agency offering policies to consumers across the United States.

2.      To grow its business and attract new customers, Allstate, through telemarketers working on its behalf, conducted (and continues to conduct) a wide-scale telemarketing campaign that features the making of repetitive, unsolicited, phone calls to consumers' whose phone numbers have been registered on the National Do Not Call List and who have requested for the calls to Stop, all in violation of the TCPA.

3.      Allstate's telemarketing vendors, acting on Allstate's behalf and for its benefit, called persons repeatedly within the same 12-month period who had registered their phone numbers on the National DNC Registry.

4.      Among other legally cognizable injuries, by making the calls at issue in this Complaint, Defendant and its agents caused Plaintiff and the members of the Class actual harm that includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, and the interference with and interruption in their ability to use and enjoy their phones.

5.      Defendant and its telemarketing vendors made the calls knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access, their phones, including the related data, apps, software, and hardware components.

6.      The TCPA was enacted to protect consumers from calls like those alleged and described herein. Businesses like Allstate must refrain from repeatedly calling persons who've listed their phone numbers on the National DNC Registry and must honor Do Not Call requests from such persons within thirty (30) days. Allstate's agents refused to honor such prohibitions

2

and instead made and continue to make repeated unlawful calls on Allstate's behalf and for Allstate's benefit.

7.      In response to Defendant's unlawful conduct, Plaintiff brings this action seeking injunctive relief requiring Defendant to cease all unlawful telephone calling activities to telephones numbers that have been registered on the Do Not Call list, as well as an award of statutory damages to the members of the Class under the TCPA, together with costs, pre- and post-judgment interest, and reasonable attorneys' fees to be paid out of any fund created for the benefit of the Class.

## PARTIES

8.      Plaintiff Rita Brownlee is a natural person and resident of Snellville, GA.

9.      Allstate is an insurance company in Illinois and is registered with the Illinois Department of Insurance. Defendant's principal place of business is located at 2775 Sanders Road, Northbrook Illinois 60062, which is located in this District.

10.      The exact identity of Defendant's telemarketers who made the calls at issue herein on Defendant's behalf are unknown at this time. Plaintiff anticipates the potential need to amend this Complaint to add such telemarketing agents when Defendant eventually identifies them.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. The Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq*. ("CAFA") because there are over 100 class members, there is minimal diversity, and there is over $5,000,000 at issue when the claims of the Classed are aggregated. None of the exceptions to CAFA applies.

12. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and conducts a significant amount of business in this District. The decision to make and to continue to make unsolicited calls directed towards consumers whose numbers have been listed on the National Do Not Call list after they requested for the calls to Stop was made in this District, and the wrongful conduct giving rise to this case occurred in and emanated from this District.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District and conducts a significant amount of business within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District and received the calls at issue in this District.

## COMMON FACTUAL ALLEGATIONS

14. Insurance companies like Defendant often rely on telemarketing to increase their customer base. Indeed, widespread telemarketing is a primary method by which Defendant, through its telemarketing vendors, recruits new customers.

15. Allstate, through its agents, violated the TCPA by making repeated unsolicited telemarketing calls to persons who had registered their phone numbers on the National DNC Registry who had requested for the calls to Stop.

16. At all times material to this Complaint, Allstate was and remained fully aware that unsolicited telemarketing calls were and continue to be made to consumers' telephones through its own efforts and the efforts of its telemarketing vendors. Allstate had notice of consumer complaints and other information that put it on notice that its vendors, who at all times were acting on behalf of Allstate, were violating the TCPA. On information and belief, Allstate knew

4

of their TCPA violations and refused to stop or correct such conduct. The calls were made with Allstate's knowledge, approval, and Allstate accepted the benefits of the calls.

17.     All calls were made on behalf of, and for the benefit of, Allstate. Allstate received the benefits of the calls and ratified the calls. Persons who were called were expressly led to believe through the words used during the call that the caller was calling on behalf of "Allstate."

18.     Defendant Allstate, through its marketers, knowingly made (and continues to make) repeated unsolicited telemarketing calls to recipients listed on the Do Not Call registry even after they have requested for the calls to Stop. In so doing, Defendant has not only invaded the personal privacy of Plaintiff and members of the alleged Class, it also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF BROWNLEE

19.     Plaintiff Brownlee is the owner and primary user of a cellular telephone number with the last four digits ending in 4126.

20.      On May 23, 2008, Plaintiff Brownlee registered her telephone number with the last four digits ending in 4126 on the National DNC Registry.

21.     Despite the fact the number was firmly registered on the DNC for more than thirty (30) days, on May 27, 2020 Plaintiff received a call from caller ID 678-910-6597 to her cell phone ending in 4126 wanting to sell her automobile insurance for her car. Plaintiff expressly told the caller that she was not interested and not to call her again.

22.     Notwithstanding this request, later on that same day, May 27, 2020, Plaintiff received a second call from caller ID 678-910-7677 to her cell phone ending in 4126 wanting to sell her automobile insurance. Plaintiff again advised the caller that she wasn't interested and to stop calling.

23.     On June 15, 2020 Plaintiff received another call from caller ID 678-910-9265 to her cell phone ending in 4126 again seeking to sell Plaintiff insurance for her car. The caller made clear they were calling on behalf of Allstate. She again said she wasn't interested and to stop calling.

24.     On June 18, 2020 Plaintiff received another call from caller ID 678-910-9832 to her cell phone ending in 4126 again seeking to sell Plaintiff insurance for her car. The caller made clear they were calling on behalf of Allstate. She again said she wasn't interested and to stop calling.

25.     On June 22, 2020 Plaintiff received another call from caller ID 678-910-9702 to her cell phone ending in 4126 again seeking to sell Plaintiff insurance for her car. This time Plaintiff feigned interest in order to speak to a live operator. She was then transferred to an Allstate agent, employee, or contractor with an email address nifkovits1@allstate.com. Plaintiff responded to the email again asking not to be called.

26.     On July 25, 2020 Plaintiff received another call from caller ID 678-910-2776 to her cell phone ending in 4126 again seeking to sell Plaintiff insurance for her car. She told them not to call her again.

27.     Brownlee never gave Allstate or any of its agents prior express consent or permission to call her.

28.     These calls were annoying and harassing and invaded Plaintiff's privacy.

29.     In order to redress these injuries, Plaintiff, on behalf of herself and the Class of similarly situated individuals alleged herein, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited calls to residential telephones.

30.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful telemarketing activities and an award of statutory damages to the class members, together with costs, pre- and post-judgment interest, and reasonable attorneys' fees.

## CLASS ALLEGATIONS

31.     Plaintiff brings this action in accordance with Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **DNC Stop Class:** All persons in the United States from four years prior to the filing of the instant action through the date notice is disseminated to the Class (1) who Allstate or an agent acting on Allstate's behalf, (2) called at least thirty (30) days following the person's Stop request, (3) where the person's phone number had been registered on the National DNC Registry for at least thirty (30) days.

32.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Allstate, its subsidiaries, parents, successors, predecessors, agents, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assignees of any such excluded persons; and (6) persons whose claims against Allstate have been fully and finally adjudicated and/or released.

33.     Plaintiff anticipates the need to amend the class definition following appropriate discovery, including discovery confirming the scope of the Class, the identification of any telemarketers who made the calls, discovery regarding Defendant's DNC Stop procedures, and any type of consent Defendant claims was obtained.

34.     **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant or its marketers acting on its behalf made calls to thousands of consumers who were listed on the DNC registry and fall into the definition of the Class. Members of the Class can be easily identified through Defendant's and its vendors' records.

35.     **Commonality and Predominance**: There are several questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

      (a)      whether Defendant's conduct constitutes a violation of the TCPA;

      (b)      whether Defendant made repeated, unsolicited calls to consumers who were registered on the National DNC Registry;

      (c)      whether Defendant maintained written do not call policies available on demand, whether Defendant trained its personnel involved in telemarketing in such policies, and whether Defendant honored Stop or Do Not Call Requests within thirty (30) days of receipt; and

      (d)      whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

36.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

37.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Brownlee.

38.     Furthermore, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation

necessitated by Defendant's actions. It will be difficult if not impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, judicial economy, economies of scale, and comprehensive supervision by a single court.

**CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the STOP Class)**

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

41.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), states that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42.     47 C.F.R. § 64.1200(e), states that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons

described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

43.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

44.     Allstate and its telemarketers violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like the Plaintiff and the DNC Registry Class members who registered their respective cell phone numbers on the National DNC Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45.     Plaintiff and other members of the DNC Registry Class never provided any form of consent to receive telephone calls from Allstate or its agents, and Allstate does not have a current record of consent to place telemarketing calls to them.

46.     Defendant, together with and through its telemarketers, violated 47 C.F.R. § 64.1200(d) by failing to have a written do not call policy that is available on demand or otherwise, by failing to train its personnel involved in telemarketing regarding the existence and use of any such do not call policy, by failing to accurately record do not call requests internally, and by calling Plaintiff and others more than thirty (30) days after receiving a request to stop calling.

47.     As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Registry Class members suffered actual harm and, under 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

48.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the National DNC Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rita Brownlee, individually and on behalf of the Class, prays for the following relief:

1.      An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel as Class Counsel;

2.      The sum of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.      Treble damages in case willful or knowing violations are proven;

4.      An order declaring that Defendant's actions, and the actions of its agents, as set out above, violate the TCPA;

5.      An injunction requiring Defendant to cease all unsolicited calling activities to persons on the National DNC Registry who have requested Stop, and otherwise protecting the interests of the Class;

6.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

7.      An award of pre- and post-judgment interest; and

8.      Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,
**RITA BROWNLEE**, individually and on behalf of
two Class of similarly situated individuals

Dated: March 15, 2021                    By: ____/s/ *Steven L. Woodrow*_____
                                                         One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com

Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiff and the Class*