**IN THE UNTED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RITA BROWNLEE**, individually and on behalf of all similarly situated individuals, | ) ) ) | Case No. 1:21-cv-01428 |
| **Plaintiff,** | ) ) | Hon. Sharon Johnson Coleman |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **ALLSTATE INSURANCE COMPANY,** an Illinois insurance company, | ) ) ) | |
| **Defendant.** | ) | |

**PLAINTIFF RITA BROWNLEE'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

## I.    INTRODUCTION

This case challenges Defendant Allstate Insurance Company's ("Defendant" or "Allstate") serial violations of the Telephone Consumer Protection Act ("TCPA"). Either on its own or through telemarketers acting on its behalf, Allstate places unsolicited phone calls to consumers who have registered their phone numbers on the National Do Not Call ("DNC") Registry—including after such consumers request for the calls to stop. Plaintiff Rita Brownlee ("Plaintiff" or "Brownlee") was just one recipient of these calls.

Rather than take responsibility, let alone apologize, Defendant seeks a quick exit via Rule 12. Allstate asserts that the Court lacks subject matter jurisdiction over several of the calls due to a constitutional issue that was actually resolved in the Supreme Court's *AAPC* decision, and Allstate claims it can't be held liable for any calls where it wasn't specifically identified by name. Allstate also suggests that Brownlee cannot obtain appropriate injunctive relief.

Defendant's arguments fall apart. First, Allstate's interpretation of the *AAPC* decision, as implemented in cases like *Creasy* and *Lindenbaum*, ignores long-standing Supreme Court

precedent about the effect (or lack thereof) that an unconstitutional amendment has on a statute. This Court should not become the next to subvert the majority's analysis in *AAPC*. Second, Plaintiff plausibly alleged that the six calls received were made by Allstate or agents acting on its behalf. When read in context, all of the calls alleged in the Complaint shared a similar nature, content, and even phone number, and Brownlee should not be penalized for the failure of Defendant's telemarketing agents to adequately identify themselves. Finally, Plaintiff has alleged an ongoing and continued practice of violating the TCPA sufficient to warrant injunctive relief.

For these reasons, and as explained more fully below, the Court should deny Allstate's motion to dismiss in its entirety and permit this matter to proceed to discovery.

## II.     SUMMARY OF THE CLAIMS

Brownlee alleges that Allstate violated the TCPA by making unsolicited calls to her cellphone despite her registration on the National DNC Registry and her numerous requests that the calls stop. (*See* Compl., dkt. 1 at ¶¶ 20–27.) Plaintiff alleges that she received six calls in total between May 27, 2020, and July 25, 2020. (*Id.* ¶¶ 21–26.) Though not all of the callers freely identified themselves as representatives of Allstate, the six calls were all similar in nature and content—each came from a similar phone number (beginning with 678-910-XXXX) and all six calls attempted to sell Brownlee car insurance. (*Id.*) As early as the first call on May 27, 2020, Plaintiff told the caller to not call her again, but she continued to receive calls from Defendant or its agents over a period of almost two months. (*Id.* ¶ 21.)

Brownlee did not give Allstate or any of its agents prior express consent to call her. (*Id.* ¶ 27.) She brings her claim on behalf of herself and a class of similarly-situated consumers in order to stop Defendant's unlawful telemarketing campaign, which it "conducted (and continues to conduct)." (*Id.* ¶¶ 2, 7.) Brownlee seeks redress for the calls that Allstate has made to her and the

other class members, as well as an injunction requiring Defendant to cease all unlawful telemarketing activities. (*Id.* ¶ 30.)

## III.    ARGUMENT

### A.    Defendant's Jurisdictional Argument Mischaracterizes The Supreme Court's *AAPC* Decision.

Defendant first asks the Court to dismiss Plaintiff's claims with respect to five of the calls that she received for a supposed lack of jurisdiction. (Dkt. 16 at 2–3.) To hear Allstate tell it, the Supreme Court's ruling in *AAPC* supposedly rendered the TCPA's entire autodialer ban unconstitutional for the period during which the now-nullified government-debt exemption was in place, and the Court "lacks subject matter jurisdiction with respect to [the] five alleged calls" that were made before *AAPC* was decided. (*Id.* at 3.) Of course, companies like Defendant that engage in telemarketing would appreciate being relieved of all liability for unlawful texts and calls made over the last five years. But the government-debt exception—not the autodialer ban itself—was found to be unconstitutional, and the 2015 amendment that added this exemption was effectively void when enacted. Contrary to Allstate's hopeful assertions, the Supreme Court did not invalidate the entire TCPA and retroactively exempt all unlawful calls over the last five years.

Taking a quick step back, on July 6, 2020, the Supreme Court issued its opinion in *AAPC*, holding that the former government-debt exception was a content-based rule that "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S. Ct. 2335, 2343. The Supreme Court then turned to the question of the proper remedy—specifically, whether to invalidate the entire robocall restriction as enacted in 1991 or to sever and invalidate only the government-debt exemption as added by amendment in 2015. *Id.* at 2348. Seven Justices concluded that the traditional remedy of severance was

appropriate. *Id.* at 2343. Justice Kavanaugh reasoned that severance of the government-debt

exception was doubly supported because: (1) since 1934, the Communications Act has contained

an express severability clause applicable to the chapter that houses the TCPA; and (2) even in the

absence of a severability clause, the Court's presumption of severability—"firmly established

since *Marbury v. Madison*"—would apply. *Id.* at 2350–51, 52–53.

As to the effect of the amendment on the enforceability of the remainder of the statute,

Justice Kavanaugh pointed out that "the remainder of the law is capable of functioning

independently and thus would be fully operative"—indeed, it had been fully operative for more

than twenty years before the offending exemption was added. *Id.* at 2353. The Supreme Court's

historical treatment hints at the fact that the statute is enforceable notwithstanding an

unconstitutional amendment:

> The Court has long applied severability principles in cases like this one, where
> Congress added an unconstitutional amendment to a prior law. In those cases, the
> Court has treated the original, pre-amendment statute as the "valid expression of
> the legislative intent." *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526–
> 527, 49 S.Ct. 235, 73 L.Ed. 483 (1929). The Court has severed the "exception
> introduced by amendment," so that "the original law stands without the
> amendatory exception." *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 66
> L.Ed. 254 (1921).
>
> . . .
>
> Echoing *Marbury*, the Court in *Frost* explained that **an unconstitutional
> statutory amendment "is a nullity" and "void" when enacted, and for that
> reason has no effect on the original statute.** 278 U.S., at 526–527, 49 S.Ct. 235.

*Id.* (emphasis added). Put simply, unconstitutional amendments have <u>no</u> impact on the original

statute. As the Supreme Court explained in *Frost*:

> Here it is conceded that the statute, before the amendment, was entirely valid.
> When passed, it expressed the will of the Legislature which enacted it. Without an
> express repeal, a different Legislature undertook to create an exception, but, since
> that body sought to express its will by an amendment which, being
> unconstitutional, is a nullity and, therefore, powerless to work any change in the
> existing statute, that statute must stand as the only valid expression of the

legislative intent.

*Frost*, 278 U.S. at 526–27 (explaining further that "no law can be changed or repealed by a subsequent act which is void because unconstitutional. An act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality.") (citing *In Carr, Auditor, v. State ex rel. Coetlosquet*, 127 Ind. 204, 215, 26 N. E. 778, 781 (11 L. R. A. 370, 22 Am. St. Rep. 624)); *see also Eberle v. People of State of Michigan*, 232 U.S. 700, 705, 34 S. Ct. 464, 465, 58 L. Ed. 803 (1914) ("[I]n the case at bar the original local option law of 1889 had been held to be constitutional as a whole, and its validity could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities."); *Truax*, 257 U.S. at 342 ("The exception introduced by amendment to paragraph 1456 proving invalid, the original law stands without the amendatory exception.").

Despite the Supreme Court's analysis, Defendant cites to, and indeed asks the Court to join, three district courts that have sidestepped Justice Kavanaugh's analysis and the precedent set forth in cases like *Frost*, *Eberle*, and *Truax* in order to effectuate the will of *AAPC*'s two-Justice dissent. (Dkt. 16 at 3–4) (citing *Creasy v. Charter Communications, Inc.*, No. 489 F. Supp. 3d 499, 504, 511 (E.D. La. 2020); *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020)[1]; *Cunningham v. Matrix Financial Services, LLC*, 2021 WL 1226618, at *11 (E.D. Tex. Mar. 31, 2021)). But these decisions could only be reached by ignoring *Frost* and the basic premise that an unconstitutional amendment is powerless to change an otherwise constitutional statute. *Frost*, 278 U.S. at 526–27. Though *Creasy* and *Lindenbaum* may have turned a blind eye

---

[1] In the *Lindenbaum* case, an appeal was filed to the Court of Appeals for the Sixth Circuit on November 30, 2020.

to Supreme Court precedent in order to shield TCPA defendants from liability, this Court should decline Allstate's invitation to do the same.

In a footnote, Defendant makes passing reference to two district court decisions that declined to ignore *AAPC*'s own analysis and the impact of precedent like *Frost*. (*See* Dkt. 16 at 3, n. 1). In addition to these two cases cited but not discussed by Allstate, several other district courts have upheld the Constitutionality of the TCPA during the time the government debt collection exception was part of the statute. Indeed, the District Courts for the Central District of California and the Northern District of Ohio have found that *AAPC*'s invalidation of the unconstitutional amendment to the TCPA didn't invalidate the broader autodialer ban. *See Shen v. Tricolor Auto Group LLC*, No. 2:20- cv-07419-PA-AGR, 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020); *Less v. Quest Diagnostics Inc.*, No. 3:20-cv-02546, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021). Notably, the *Shen* decision refused to elevate the dissent's approach in *AAPC* above that of the majority:

> This Court, like several others to have considered the issue, declines to adopt an analysis that **appears to be at odds with the views of a majority of the Supreme Court's Justices** and the Ninth Circuit. *See, e.g.*, *Abramson v. Federal Ins. Co.*, CV 8:19-2523 (M.D. Fla. Dec. 11, 2020); *Buchanan v. Sullivan*, CV 8:20-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Burton v. Fundmerica, Inc.*, CV 8:19-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020). Instead, it appears that a majority of Justices, and the Ninth Circuit, ascribe to a more limited view of severance that "invalidates and severs unconstitutional provisions from the remainder of the law rather than razing whole statutes or Acts of Congress. Put in common parlance, the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act as passed by Congress). **Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole otherwise constitutional state**." AAPC, 140 S. Ct. at 2351.

*Shen v. Tricolor Auto Group LLC*, 2020 WL 7705888, at *4 (emphasis added). The Central District of California adopted a similar analysis in *Trujillo*, relying on the Supreme Court's precedent in *Frost* and declining to follow in the footsteps of the district courts that failed to do

6

the same. *Trujillo v. Free Energy Savings Co., LLC,* No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *2–5 (C.D. Cal. Dec. 21, 2020). The reality is that most courts to review this issue have disagreed with the reasoning of *Creasy, Cunningham,* and *Lindenbaum. See, e.g.*, *Stoutt v. Travis Credit Union,* 2021 U.S. Dist. LEXIS 6019 (E.D. Cal. Jan. 12, 2021); *Miles v. Medicredit, Inc.,* No. 4:20-CV-01186 JAR, 2021 U.S. Dist. LEXIS 44267 (E.D. Cal.  March 9, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, Civ. No. 0:20-cv-60638-WPD, 2021 U.S. Dist. LEXIS 30940 (S.D. Fl. Jan. 19, 2021); *McCurley v. Royal Sea Cruises,* Case No. 17-cv-00986-BAS-AGS, 2021 U.S. Dist. LEXIS 16403 (S.D. Cal.  January 28, 2021); *Rieker v. Nat'l Car Cure LLC,* Case No. 3:20-cv-5901-TKW-HTC, 2021 U.S. Dist. LEXIS 9133 (N.D. Fl. Jan. 5, 2021).

As the Supreme Court noted, the TCPA's autodialer restriction "proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*." *AAPC*, 140 S. Ct. at 2348 (emphasis in original). If the approach encouraged by Allstate were accepted, all automated telemarketing between 2015 and 2020 would be shielded from liability. Allstate is seeking precisely the kind of blanket immunity that the Supreme Court refused to extend to AAPC. *Id.* at 2356. This Court should likewise refuse to grant it. Though the government-debt exception was unconstitutional, it was severable from the TCPA and had no effect on the constitutionality of the autodialer ban. Accordingly, Allstate may be held to account for the calls it made prior to the Supreme Court's decision—autodialed calls were prohibited before, while, and after the unconstitutional exception for government-debt collection calls was on the books. Defendant's motion to dismiss claims for calls prior to July 6, 2020, should be denied.

       **B.**    **Allstate's Failure To Identify Itself On Three Of The Calls Should Not Be Counted Against Plaintiff—Brownlee Alleges That Defendant Is Responsible For All Of The Calls, Including The July 25, 2020 Call Made More Than Thirty Days After Her Stop Request.**

After seeking dismissal of claims related to five of the six calls made to Plaintiff prior to the *AAPC* decision, Allstate next asks the Court to dismiss claims related to the three calls during which the callers did not identify Allstate by name. (Dkt. 16 at 4–7.) But Plaintiff has alleged sufficient facts about the similar nature and content of the calls to support a reasonable inference that Allstate, or its agents calling on its behalf, was responsible for all six calls. Her claims should not be subject to dismissal as a result of the failure of Defendant's telemarketing representatives to adequately identify themselves.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead allegations that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *1 (N.D. Ill. Aug. 7, 2012) (internal citations omitted). In ruling on a motion to dismiss for failure to state a claim, "the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint." *Id.* (citing *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir.2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir.2002)).

Here, Plaintiff has plausibly alleged that Allstate is responsible for the calls that she received. On all six calls that she alleges, she was solicited to buy car insurance. (Dkt. 1 at 21–26.) Further, each of the calls came from nearly identical numbers, all beginning with 678-910-XXXX. (*Id.*) The uniformity of these phone numbers—including for the calls in which Allstate was identified by name—is suggestive of call spoofing. Call spoofing is a fairly common practice engaged in by telemarketers who wish to trick consumers into picking up the phone.

*See, e.g.*, *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 234 (5th Cir. 2012) ("'Spoofing' is misrepresenting the originating telephone caller's identification (caller ID) to the call recipient."); *United States v. Palumbo*, 448 F. Supp. 3d 257, 261–63 (E.D.N.Y. 2020) (considering calls that "'spoof' local area codes to mislead call recipients into believing that the incoming calls originated locally").[2] Doing so may make it difficult to identify the party responsible for each call individually, but when read together, the calling pattern emerges and the Court may reasonably infer that Allstate was responsible for all six calls.

When construed favorably to Plaintiff—as must be done on a motion to dismiss— Plaintiff's allegations provide sufficient context to permit the reasonable inference that Allstate was responsible for all six calls, including those during which its agents did not readily identify Allstate as the source of the call. Indeed, on one of the calls during which Allstate was *not* identified by the initial caller, Plaintiff feigned interest in order to identify who was calling, and she was connected to an Allstate representative. (Dkt. 1 at ¶ 22.) She has provided sufficient factual detail to support her allegations, including the claim that Allstate called her more than 30 days after each of her first *five* stop requests on May 27, June 15, June 18, and June 22, 2020. (*See id.* ¶¶ 21–26.) Defendant asks the Court to penalize Brownlee and dismiss her claims for the three calls that did not name Allstate, but doing so would simply reward Defendant and its telemarketing agents for failing to properly announce themselves and permit Allstate to continue its telemarketing campaign unchecked.

Plaintiff recognizes that discovery is necessary to confirm the origin of the calls alleged, particularly those during which Allstate was not named. At this stage of the proceedings, the

---

[2] The 678 area code featured for each call is an Atlanta, Georgia area code, and Plaintiff is a resident of nearby Snellville, Georgia. (*See* Dkt. 1 at ¶ 8.)

critical point is that she has alleged sufficient facts regarding the similarity of the calls, both in content and in phone number, to suggest above a speculative level that Defendant was responsible for all six unsolicited calls that she received. Indeed, a contrary finding would enable telemarketers who violate the TCPA to shield their identities. Accordingly, she has met her pleading requirements to survive a motion to dismiss, and Defendant's motion should be denied.

**C.    Allstate's Call To Dismiss The Claims For Injunctive Relief Can Only Be Supported By Ignoring The Allegations In The Complaint Of An Ongoing And Continuing Practice Of Unlawful Telemarketing.**

Defendant's final argument for dismissal focuses on Plaintiff's request for declaratory and injunctive relief that would stop Allstate from continuing its allegedly unlawful telemarketing practices. Defendant contends that money damages can adequately compensate for the harms that it has caused, but its contention can only be supported by ignoring Brownlee's allegations that this is a continuing practice. The repeated nature of Allstate's calls, along with the failure to honor Plaintiff's stop requests, creates a substantial likelihood of future injury to Brownlee and the Class members, even if Defendant has voluntarily ceased placing calls to Plaintiff. Her request for injunctive relief is warranted and should not be dismissed.

As Allstate points out, "[a] plaintiff seeking a forward-looking remedy like an injunction or a declaratory judgment has standing to sue for an alleged future injury only if the threatened injury is certainly impending or there is a *substantial risk* that the harm will occur." (Dkt. 16 at 11) (emphasis added) (citing *Santiago v. City of Chicago*, 446 F. Supp. 3d 348, 364 (N.D. Ill. 2020)). Addressing these standards in the TCPA context, the Eleventh Circuit noted that a plaintiff must establish both a likelihood of future injury and the inadequacy of a remedy at law to support injunctive relief. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

Plaintiff does not dispute these standards for supporting injunctive relief; she does, however, dispute Defendant's characterization of her complaint as devoid of any allegations related to future injury. Allstate would have the Court believe that Brownlee's Complaint "uniformly refer[s] to conduct that has occurred in the past." (Dkt. 16 at 13.) Of course, the calls made to Plaintiff herself happened in the past, but Defendant seems to turn a blind eye to the various portions of her Complaint where Brownlee alleges that the calls were part of a continuing telemarketing campaign:

- "Allstate, through telemarketers working on its behalf, conducted (*and continues to conduct*) a wide-scale telemarketing campaign . . . ." (Dkt. 1 at ¶ 2) (emphasis added);

- "Allstate's agents refused to honor such prohibitions and instead made *and continue to make* repeated unlawful calls on Allstate's behalf . . . ." (*Id.* ¶ 6) (emphasis added);

- "Plaintiff brings this action seeking injunctive relief requiring Defendant to cease all unlawful telephone calling activities . . . ." (*Id.* ¶ 7);

- "Allstate was and remained fully aware that unsolicited telemarketing calls were *and continue to be* made to consumers' telephones . . . ." (*Id.* ¶ 16) (emphasis added);

- "Defendant Allstate, through its marketers, knowingly made (*and continues to make*) repeated unsolicited telemarketing calls to recipients listed on the Do Not Call registry . . . ." (*Id.* ¶ 18) (emphasis added);

Though Plaintiff herself does not allege receipt of any additional calls during the pendency of this matter, the nature of the calls that she received—and Allstate's failure to honor her stop requests—elevate the likelihood of future harm to herself and other members of the class above

11

the speculative level.[3] (*See* Dkt. 1 at ¶¶ 21–29.) In the absence of injunctive relief, there is a substantial risk that Defendant will continue its telemarketing practice as a means of marketing its insurance products to unsuspecting consumers.

Following necessary discovery, Plaintiff intends to prove her allegations that Allstate uniformly made unsolicited calls to thousands of similarly-situated consumers. Money damages may be adequate to compensate Plaintiff and the Class members for calls that have already been made, but they cannot account for the risk of continued harm that will occur if Defendant is permitted to engage in its unlawful telemarketing campaign. Taken as true, as again must be done on a motion to dismiss, Brownlee's allegations support her request for declaratory and injunctive relief in order to prevent continued harm to herself and other consumers as a result of Allstate's unsolicited telemarketing practices. The Court should deny Defendant's motion to dismiss.

## IV.     CONCLUSION

Allstate's motion should be denied in its entirety. Defendant's request for blanket immunity to shield it from liability for calls made before July 6, 2020, subverts the holding of the majority of the Supreme Court in *AAPC*. Further, Plaintiff has met her pleadings requirements to survive a motion to dismiss with regard to her claim that Allstate is responsible for the six calls alleged. She has also alleged a substantial likelihood of continued harm to warrant her request for declaratory and injunctive relief. Accordingly, the Court should deny Defendant's motion to dismiss, permit the parties to proceed to discovery, and award any such relief as it deems

---

[3] Defendant elsewhere claims that Plaintiff cannot point to a likelihood of continued harm to other class members in support of her claim for injunctive relief, but Allstate cites only to cases addressing standing and a plaintiff's failure to allege any harm at all. (*See* Dkt. 16 at 14.) This argument is untenable—if Allstate's position were true, then TCPA defendants could evade any and all declaratory or injunctive relief by simply ceasing calls to the named plaintiff.

necessary and just.

Respectfully Submitted,

**RITA BROWNLEE**, individually and on behalf of all similarly situated individuals

Dated: June 25, 2021

By: ____/s/____Steven L. Woodrow_____
Counsel for Plaintiffs

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiff and the alleged Class*

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on June 25, 2021.

*/s/ Steven L. Woodrow*